UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRANDON RYAN,

                Plaintiff,                Civ.

      -against-

                                          COMPLAINT AND
THE CITY OF NEW YORK, NEW YORK CITY      JURY DEMAND
POLICE DETECTIVE EDWARD McHUGH,
Shield 06612, and NEW YORK CITY POLICE
OFFICERS DARIO HENRIQUEZ, Shield 15496,
TAHINO SOTOMAYOR, Shield 16754,
OTIS CASEY, Shield 28947, CHRISTIAN
OLIVERA, Shield 30674, and RAFAEL PENA,
Shield 10135, and JOHN DOES I-III

                Defendants.
------------------------------------------------------------------X

Plaintiff, by his attorneys, ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP, alleges as follows:

PRELIMINARY STATEMENT

1.      This is an action for damages sustained by a citizen of the United States of America against employees of the New York City Police Department who violated the civil and constitutional rights of the Plaintiff by falsely arresting and imprisoning him on the morning of December 26, 2013, and by then causing him to be unlawfully detained and incarcerated from December 26, 2013 through March 12, 2015, a period of approximately fourteen and one-half months; and against the CITY OF NEW YORK, which is sued as a person pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION

2. Plaintiff institutes these proceedings and invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343 to obtain costs of suit, including reasonable attorney's fees, and to recover damages suffered by Plaintiff and caused by the Defendants' violations of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983.

3. This Court also has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the instant claims arise under the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

4. The violations of Plaintiff's rights alleged herein occurred within the City, County, and State of New York.

## PARTIES

5. Plaintiff BRANDON RYAN is a citizen of the United States of America and was at all times relevant herein an individual residing in the City, County, and State of New York.

6. Detective EDWARD McHUGH and Police Officers DARIO HENRIQUEZ, TAHINO SOTOMAYOR, OTIS CASEY, CHRISTIAN OLIVERA, and RAFAEL PENA, and JOHN DOES I-III, are employees of the New York City Police Department ("NYPD"), and at all relevant times herein were acting in the capacity of agents, servants, and employees of the Defendant CITY OF NEW YORK. They are each sued individually and in their official capacities.

7. Defendant CITY OF NEW YORK is a municipal entity authorized and existing pursuant to and by virtue of the laws of the State of New York. It is authorized by law to maintain the NYPD, which acts as the CITY OF NEW YORK's agent in the area of law enforcement.

8. At all times relevant herein, Defendants McHUGH, HENRIQUEZ, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, and their agents, assistants, and employees, acted pursuant to the policies, regulations or decisions officially adopted or promulgated by agents of the NYPD, whose acts represent official policies or governmental customs of the NYPD and the Defendant CITY OF NEW YORK.

## FACTUAL ALLEGATIONS

9. At approximately 4:30 a.m. on the morning of December 26, 2013, Plaintiff was stopped and arrested near the intersection of East 115th Street and Second Avenue in the County, City, and State of New York.

10. Plaintiff's arrest was conducted by members of the NYPD, including Defendants HENRIQUEZ and SOTOMAYOR.

11. The arresting officers, including Defendants HENRIQUEZ and SOTOMAYOR, did not have probable cause to arrest and/or detain the Plaintiff.

12. After Plaintiff was placed in handcuffs, he was transported by members of the NYPD, including Defendants HENRIQUEZ and SOTOMAYOR, to the 23rd Precinct, located at 4295 Broadway in Manhattan.

13. While he was held at the 23rd Precinct, Plaintiff was subjected to a prolonged interrogation by members of the NYPD, including Defendants CASEY and OLIVERA.

14. On the evening of December 26, at approximately 7:10 p.m., Defendant McHUGH executed a felony complaint alleging that Plaintiff had committed the crime of Gang Assault in the First Degree, in violation of New York Penal Law ("P.L.") § 120.07, two counts of Assault in the First Degree, in violation of P.L. § 120.10[1] and [2], and one count of Assault in the Second Degree, in violation of P.L. § 120.05[1].

15. The felony complaint executed by Defendant McHUGH further alleged that Plaintiff had committed the charged crimes on or about 3:50 a.m. on the morning of December 26, 2013, inside a parking garage located at 3896 Tenth Avenue in Manhattan.

16. The felony complaint executed by Defendant McHUGH also indicated that he had viewed a video recording of the subject parking garage taken at the time of the alleged criminal incident, and that this video depicted a physical fight involving several individuals, during which Plaintiff was depicted "throw[ing] a punch down on [a] complainant and that said complainant fell to the ground[.]"

17. The felony complaint executed by Defendant McHUGH contained multiple misstatements of fact, including a material misrepresentation of what was depicted in the video recording.

4

18. At the time the felony complaint was prepared and executed, neither Defendant McHUGH nor any employee of the NYPD had probable cause to believe that Plaintiff had committed the crimes alleged in the complaint.

19. When Plaintiff was transported from the 23rd Precinct to the Manhattan Criminal Court building for his arraignment on the felony complaint, he entered a plea of not guilty and was remanded to the custody of the New York City Department of Correction.

20. Plaintiff was subsequently indicted by a grand jury sitting in New York County. The indictment that was filed against him ("First Indictment") charged Plaintiff with two counts of Gang Assault in the First Degree, in violation of P.L. §§ 120.07 and 120.10[1], four counts of Assault in the First Degree, in violation of P.L. § 120.10[1] and [2], and one count of Assault in the Second Degree, in violation of P.L. § 120.05[2].

21. On March 26, 2014, the Honorable Justice Maxwell Wiley, to whom the criminal case against Plaintiff was assigned, dismissed the First Indictment pursuant to New York Criminal Procedure Law ("C.P.L.") § 190.65, which provides that "a grand jury may indict a person for an offense when . . . *competent and admissible evidence* before it provides reasonable cause to believe that such a person committed such offense." (emphasis added.)

22. In dismissing the First Indictment for lack of competent and admissible evidence, Justice Wiley noted that "the only evidence as to what occurred in the garage, and who committed the alleged crime, came from an

5

unauthenticated videotape," which the prosecution did not introduce into evidence before the grand jury.

23. Justice Wiley further noted that instead of introducing the video into evidence before the grand jury, the prosecution permitted an NYPD detective, who upon information and belief was Defendant McHUGH, to testify as to what was depicted in the video. "Absent the Detective's improper and inadmissible testimony regarding what he observed on the unauthenticated videotape," Justice Wiley concluded that "the remaining evidence was insufficient to support the charges" against Plaintiff.

24. After the first indictment against Plaintiff was dismissed, three months after Plaintiff had first been arrested, the Manhattan District Attorney's office re-presented the case to the grand jury, and a second indictment was obtained ("Second Indictment"). This second indictment charged Plaintiff, along with two co-defendants, Michael Julio and Kendall Newland, with the same seven crimes that had been charged in the First Indictment.

25. Plaintiff was arraigned on the Second Indictment on April 30, 2014. He entered a plea of not guilty to each of the charged counts and bail was set in the amount of a $200,000 bond or $100,000 cash.

26. The high amount of bail that was set by the Court was far in excess of what Plaintiff could afford to pay or post, and he therefore remained incarcerated as a consequence of the criminal charges that had been brought against him.

27. On February 9, 2015, after multiple court dates were held in connection with Plaintiff's criminal case, during which defense counsel repeatedly informed the Court that the video tape evidence did not depict the actions for which Plaintiff was wrongfully arrested and prosecuted, Justice Wiley lowered Plaintiff's bail to $25,000.

28. On March 10, 2015, a bail bond was posted by American Surety Co. on Plaintiff's behalf in the amount of $25,000.

29. On March 12, 2015, approximately fourteen and one-half months after he had been initially arrested and detained in connection with his criminal case, Plaintiff was released from custody of the New York City Department of Correction.

30. Following Plaintiff's release on bond, several court dates were held in connection with his criminal case.

31. On November 18, 2015, the Second Indictment was dismissed on motion of the District Attorneys Office, and the case was sealed approximately thirty days thereafter.

32. At the time of Plaintiff's arrest, the Defendants knew or should have known that Plaintiff did not commit the crimes for which he had been arrested and charged.

33. At the time of Plaintiff's arrest, and throughout the course of his prolonged detention, incarceration, and criminal prosecution, the Defendants knew or should have known that there was not probable cause to believe that Plaintiff had committed the crimes for which he was arrested, incarcerated, and prosecuted.

7

34. The Defendants ignored and/or misrepresented exculpatory video evidence that indicated that Plaintiff had not committed the offenses for which he was arrested, detained, criminally prosecuted, and incarcerated for a period of approximately fourteen and one-half months.

35. The Defendants failed to make a full and complete presentation of the facts to the grand jury, including failing to present exculpatory information to the grand jury.

36. The Defendants deviated egregiously from police procedure in investigating the assault that had been charged against the Plaintiff.

37. As a consequence of Defendants' egregious deviations from police procedure, Plaintiff was wrongfully arrested, detained, criminally prosecuted and incarcerated for approximately fourteen and one-half months.

38. Throughout the period of Plaintiff's detention, the Defendants possessed credible information that Plaintiff did not commit the crimes for which he had been arrested, detained, criminally prosecuted, and incarcerated for approximately fourteen and one-half months.

39. The Defendants improperly withheld exculpatory information from the grand jury, and thereafter withheld or misrepresented such information from the New York State Supreme Court, Criminal Branch.

40. The Defendants improperly withheld or misrepresented exculpatory information from the New York County District Attorney's office that they were under an obligation to disclose.

## Plaintiff's Damages

41. As a result of the Defendants' actions in unlawfully arresting and maliciously prosecuting Plaintiff, Plaintiff was incarcerated in New York City jails from December 26, 2013 through March 12, 2015, a period of approximately fourteen and one-half months.

42. During his prolonged period of incarceration, which was a consequence of the Defendants' improper and unlawful conduct, Plaintiff was forced to continually to defend himself against physical attacks.

43. Apart from his injuries relating to his prolonged deprivation of liberty and his economic losses, Plaintiff also suffered severe emotional distress and psychological damages as a direct consequence of his wrongful arrest and prolonged incarceration, which were caused by the Defendants' improper and unlawful actions and omissions.

## FEDERAL CAUSES OF ACTION

### FALSE ARREST AND IMPRISONMENT - 42 U.S.C. § 1983

44. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

45. As a result of the Defendants' wrongful conduct described above, Plaintiff was subjected to an illegal, improper and false arrest, and was caused to be falsely detained, criminally prosecuted, and incarcerated for approximately fourteen and one-half months without probable cause and without his consent.

46. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, he lived in constant fear for his personal safety during his prolonged period of incarceration, he was physically and emotionally injured, repeatedly searched, strip-searched and humiliated, and suffered substantial economic losses and psychological and emotional injuries.

47. The improper and unlawful actions and omissions of the Defendants, as described above, were committed under color of state authority, namely the authority of Defendant CITY OF NEW YORK, and such actions and omissions deprived Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to, his Fourth and Fourteenth Amendment right to bodily integrity, and to be free from false arrest, unlawful imprisonment, and unlawful seizure of his person.

## MALICIOUS PROSECUTION - 42 U.S.C. § 1983

48. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "48" with the same force and effect as if fully set forth herein.

49. Collectively and individually, Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, misrepresented and withheld exculpatory evidence before prosecutors in the New York County District Attorney's office and before the grand jury.

50. Collectively and individually, defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, did not make a complete and full statement of material facts to prosecutors in the New York County District Attorney's office and before the grand jury.

51. Collectively and individually, Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, and PENA were involved in the wrongful arrest and initiation of criminal proceedings against Plaintiff.

52. The Defendants lacked probable cause to arrest or initiate criminal proceedings against Plaintiff.

53. Collectively and individually, Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, acted with malice in arresting and initiating criminal proceedings against Plaintiff.

54. Throughout the course of the criminal judicial proceedings against Plaintiff, the Defendants at all times lacked sufficient legal cause to continue such criminal proceedings.

55. The Defendants acted with malice in continuing criminal proceedings against Plaintiff from December 26, 2013 through November 18, 2015, a period of approximately one year and eleven months.

56. The Defendants misrepresented and/or withheld exculpatory evidence throughout all phases of the criminal proceeding against Plaintiff.

57. Notwithstanding the unlawful and malicious actions of the Defendants, the criminal proceeding against Plaintiff was ultimately terminated in

11

his favor on November 18, 2015, when the charges were dismissed on motion of the Manhattan District Attorney's Office.

58. As a result of the Defendants' wrongful and unlawful actions, Plaintiff was subjected to a baseless and protracted criminal prosecution, his liberty was restricted for an extended period of time, he was put in fear for his safety and was subjected to threats by other inmates, he was physically and emotionally injured, repeatedly strip-searched and humiliated, and suffered substantial economic and psychological damages and losses.

## UNLAWFUL SUSTAINED DETENTION - 42 U.S.C. § 1983

59. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "59" with the same force and effect as if fully set forth herein.

60. The above-described actions and omissions of the Defendants, including but not limited to, misrepresenting and/or withholding exculpatory evidence, all engaged in under color of law, violated Plaintiff's right to be free from sustained detention after it was known, or should have been known, that he was legally entitled to release and to a dismissal of all criminal charges that had been wrongfully brought against him.

61. Plaintiff's right to be free from an unlawful sustained detention was caused by the Defendants' egregious deviations from police procedure in connection with the investigation of the assault incident alleged in the felony complaint and the two indictments described above.

62. The prolonged period of Plaintiff's wrongful incarceration, which was a direct result of the Defendants' improper and unlawful actions, was excessive.

63. The Defendants knew or should have known that the information on which Plaintiff continued to be detained was legally insufficient to support his prolonged incarceration.

64. The Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated by such excessive detention.

## CAUSE OF ACTION AGAINST DEFENDANT CITY OF NEW YORK

65. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "65" with the same force and effect as if fully set forth herein.

66. Defendant CITY OF NEW YORK knew or should have known of the propensity of Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, to engage in the illegal and wrongful acts and omissions detailed above and/or, as a matter of policy and practice, have with deliberate indifference failed to take steps to uncover and/or correct such conduct.

67. Upon information and belief, Defendant CITY OF NEW YORK had prior notice of the propensities of Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, but took no adequate steps to train them, correct their abuses of authority, or to discourage their unlawful use of authority.

13

68. Acting under color of law, by and through the policy-makers of the CITY OF NEW YORK, and pursuant to official policy or custom and practice, the CITY OF NEW YORK intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK, failed to effectively screen, hire, train, instruct, supervise, control and discipline, on a continuing basis, their police officers and detectives, including Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, for their unlawful propensities, including misrepresenting and/or withholding exculpatory evidence, falsely swearing to criminal complaints against citizens, presenting misleading and/or incomplete testimony before the grand jury; and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the individual Defendants named herein to be in a position to cause Plaintiff injury and violate Plaintiff's federal and state constitutional rights, and/or to permit these actions to take place without Plaintiff's knowledge or consent.

69. On information and belief, Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to, the Defendant CITY OF NEW YORK and the New York City Police Department that the Defendants herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the Plaintiff herein.

70. The CITY OF NEW YORK had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. Defendant CITY OF NEW YORK had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK, failed to do so.

71. On information and belief, Defendant CITY OF NEW YORK and the NYPD maintained an inadequate structure for risk containment and stress management relative to its police officers, and failed to create proper means of containing such risk and managing such stress. On information and belief, such structure was deficient at the time of selection of police officers, and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit employees NYPD to function at levels of significant and substantial risk to the public in general.

72. As a result of the foregoing conscious policies, practices, customs and/or usages, Defendant CITY OF NEW YORK and the NYPD have permitted and allowed the employment and retention of officers and detectives whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or racially motivated behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct and omissions alleged herein and are otherwise a direct and proximate cause of the injuries to Plaintiff.

73. As a result of the foregoing, Plaintiff was deprived of liberty, sustained emotional injuries, was subject to great humiliation, and was otherwise harmed, damaged and injured.

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

75. Defendant CITY OF NEW YORK negligently hired, screened, retained, supervised and trained Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III.

76. The wrongful and illegal acts and omissions of the Defendants described above violated Plaintiff's statutory and common law rights as guaranteed by the Federal Constitution and by the laws and Constitution of the State of New York, and as Defendant CITY OF NEW YORK is the employer of Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and

16

JOHN DOES I-III, the CITY OF NEW YORK is liable to Plaintiff for negligent hiring, screening, retention, supervision and training.

77. As a result of the foregoing, Plaintiff was deprived of liberty, was subject to great humiliation, and was otherwise harmed, damaged, and injured, all to his damage in the amount of Ten Million ($10,000,000.00) Dollars.

## PUNITIVE DAMAGES CLAIM

78. As a result of the extreme, wanton, and outrageous nature of the conduct of Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III, in, among other things, arresting the Plaintiff without cause or reason, maliciously prosecuting Plaintiff, and subjecting Plaintiff to an extended period of incarceration, Plaintiff is entitled to punitive damages in the amount of Five Million ($5,000,000.00) Dollars.

## RESPONDEAT SUPEREOR LIABILITY

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "79" with the same force and effect as if fully set forth herein.

80. At all times relevant herein, Defendants, McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III were acting within the scope of their employment as officers and agents of the NYPD.

81. Defendant CITY OF NEW YORK is liable for compensatory and exemplary damages under the doctrine of *respondeat supereor* or is liable to indemnify the individual Defendants McHUGH, HENRIQUEZ, TAHINO,

SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III for the tortious and unlawful acts committed within the scope of their employment, pursuant to provisions of the General Municipal Law.

    WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

    A.    In favor of Plaintiff for appropriate compensatory damages on Plaintiff's federal claims;

    B.    Awarding Plaintiff punitive damages against Defendants McHUGH, HENRIQUEZ, TAHINO, SOTOMAYOR, CASEY, OLIVERA, PENA, and JOHN DOES I-III in the amount of Five Million ($5,000,000.00) Dollars;

    C.    Pursuant to 42 U.S.C. § 1988 awarding Plaintiff reasonable attorney's fees, interest, costs, and disbursements of this action; and

    D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:    New York, New York
             September 30, 2016

Lucas Anderson
Robert A. Soloway
ROTHMAN, SCHNEIDER,
    SOLOWAY & STERN, LLP
*Attorneys for Plaintiff*
100 Lafayette Street
New York, New York 10013
(212) 571-5500